UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUAN ESPINAL,

            Petitioner,

— against —

UNITED STATES OF AMERICA,

            Respondent.

**08-cr-242 (ARR)**
**09-cr-683 (ARR)**
**16-cr-349 (ARR)**
**19-cv-6522 (ARR)**

**Not for print or electronic publication**

**Opinion & Order**

ROSS, United States District Judge:

The petitioner, Juan Espinal, has moved pursuant to 28 U.S.C. § 2255 for an order vacating, setting aside, or correcting his sentence. He filed his motion on November 15, 2019.[1] The government opposes. Because it is untimely, the petitioner's motion is denied.

## BACKGROUND

The facts underlying Espinal's habeas petition arise from three related criminal cases having docket numbers 08-cr-242, 09-cr-683, and 16-cr-349. The first two of these cases began with charges brought in 2008 and 2009. In 2008, Espinal was charged in this court with, in relevant part, conspiracy to commit robbery and use of a firearm in relation to a crime of violence. *See*

---

[1] Rule 3(d) of the Rules Governing § 2255 Cases provides that, for the purpose of determining timeliness, I must look to the date on which the petitioner deposited his petition in his prison's internal mailing system. *See* Rule Governing § 2255 Cases 3(d). However, this date is operative only if the petitioner submits "a declaration in compliance with 28 U.S.C. § 1746 or . . . a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." *Id.* Because petitioner has not submitted either a declaration or a notarized statement setting forth this information, I look to the filing date on ECF. In any event, even if I deemed his petition "filed" several days or even weeks earlier, that determination would not have a material effect on my analysis.

1

Indictment, Docket No. 08-cr-242, ECF No. 49; *see also* Superseding Indictment, ECF No. 113. He pleaded guilty to these charges. *See* Sealed Min. Entry, May 14, 2009, ECF No. 168. In 2009, Espinal was charged—in the United States District Court for the Southern District of New York— with a drug conspiracy. *See* Information 1–2, Docket No. 09-cr-683, ECF No. 1-2. He pleaded guilty and agreed to the transfer of jurisdiction to this district. *See* Consent to Transfer Jurisdiction 1–2, ECF No. 1. On December 10, 2010, Judge Townes sentenced Espinal in both cases. *See* Min. Entry, Dec. 10, 2010, Docket No. 08-cr-242, ECF No. 405; Min. Entry, Dec. 10, 2010, Docket No. 09-cr-683, ECF No. 3. The court sentenced Espinal to, in relevant part, thirty-six months' imprisonment in each case—to run concurrently—and five years of supervised release. Min. Entry, Dec. 10, 2010, Docket No. 08-cr-242; Min. Entry, Dec. 10, 2010, Docket No. 09-cr-683. Espinal was released from prison on December 23, 2010, when he began his five-year period of supervision. *See* Pet. for Warrant or Summons Gov't Ex. A at 1, Docket No. 08-cr-242, ECF No. 1347-1; Mot. to Vacate Under 28 U.S.C. § 2255 at 1, ECF No. 1342 ("Pet'r's Br."); Government Mem. in Opp'n to § 2255 Mot. 2, ECF No. 1347 ("Gov't Br."). According to the government, his period of supervised release would expire on December 22, 2015. Gov't Br. 2.

Shortly before the expiration of his term of supervised release, Espinal engaged in conduct that led to the revocation of his supervised release and the initiation of new criminal charges. Specifically, in November 2015, Espinal was arrested on drug conspiracy charges. *See* Sealed Violation of Supervised Release Report 6, Docket No. 08-cr-242, ECF No. 1183-1; Pet'r's Br. 1; Gov't Br. 2. On December 16, 2015, Judge Azrack issued a summons ordering Espinal to appear before the court to answer charges that he had violated the conditions of his supervised release. *See* Summons Gov't Ex. A at 3. In addition, a grand jury indicted Espinal on various drug charges in a new criminal case arising from this conduct. *See* Indictment, Docket No. 16-cr-349, ECF No.

13. In December 2016, I presided over Espinal's initial appearance on the violation of supervised release. *See* Min. Entry, Dec. 20, 2016, Docket No. 08-cr-242, ECF No. 1262; Min. Entry, Dec. 20, 2016, Docket No. 09-cr-683, ECF No. 12. In March 2017, Espinal pleaded guilty before me as to one count of his indictment in this latest criminal case, *see* Min. Entry, Mar. 28, 2017, Docket No. 16-cr-349, ECF No. 26, and as to his violation of supervised release, *see* Min. Entry, Mar. 28, 2017, Docket No. 08-cr-242, ECF No. 1268; Min. Entry, Mar. 28, 2017, Docket No. 09-cr-683, ECF No. 13. On August 16, 2017, I sentenced him to sixty-six months' imprisonment and three years of supervised release in the criminal case, *see* Min. Entry, Aug. 16, 2017, Docket No. 16-cr-349, ECF No. 31, to be followed by a consecutive sentence of twenty-four months' imprisonment for the violation of supervised release, *see* Min. Entry, Aug. 16, 2017, Docket No. 08-cr-242, ECF No. 1278; Min. Entry, Aug. 16, 2017, Docket No. 09-cr-683, ECF No. 14. Judgment entered on August 18, 2017. *See* J., Docket No. 08-cr-242, ECF No. 1279; J., Docket No. 09-cr-683, ECF No. 15; J., Docket No. 16-cr-349, ECF No. 32.

Espinal claims that he received ineffective assistance of counsel in connection with the August 2017 sentencing proceeding. Espinal relates that after his sentencing, he asked his attorney "about appealing" because he "had a desire to appeal[.]" Pet'r's Br. 2. According to Espinal, his attorney advised him that he could not appeal because his plea agreement in his criminal case contained a waiver of the right to appeal. *Id.* Espinal argues that this advice amounted to ineffective assistance of counsel because despite the waiver, he had a right to appeal from some aspects of his sentencing, and he would have insisted that his attorney file a notice of appeal if his attorney had advised him of that right. *See id.* Espinal's plea and sentencing attorney recalls that he told Espinal that he could not appeal the sixty-six-month sentence imposed in his criminal case because his plea agreement contained an appeal waiver, but he "do[es] not recall what, if anything, [he] told

Espinal with regard to his right to appeal the Court's 24-month sentence on the violation of supervised release." Att'y Decl. Gov't Ex. C at ¶ 6, Docket No. 08-cr-242, ECF No. 1347-3. Counsel also asserts that "Espinal did not ask [him] to file a notice of appeal on his behalf." *Id.* ¶ 7.

Espinal also argues that I revoked his term of supervised release without jurisdiction. He claims that he was never served with the December 16, 2015 summons that issued in connection with his violation of supervised release. *See* Pet'r's Reply 1, Docket No. 08-cr-242, ECF No. 1350. He therefore assumes that no summons issued during the five-year period of his supervised release and argues that, without such summons having issued, I lacked jurisdiction to revoke his supervised release and impose the twenty-four-month sentence. *See* Pet'r's Br. 3. He first frames this argument in terms of ineffective assistance of counsel, as his attorney did not object to or appeal from the supposed lack of summons. *See id.* In his reply brief, however, Espinal frames his argument differently. There, he argues that I should vacate his sentence because his term of supervised release ended on December 9—not on December 22—of 2015. Pet'r's Reply 1. Because his term of supervised release ended on December 9, he argues, I lacked jurisdiction to revoke his supervised release based on a summons issued on December 16. In support of this argument, he cites a "Sentence Monitoring Computation Data" document from the Bureau of Prisons related to his term of imprisonment for the 2008 and 2009 convictions; this document shows that he had a projected "statutory release date" from prison of December 10, 2010; that he was actually released on December 23; and that he over-served his "time" by thirteen days. Sentence Monitoring Computation Data 3, Docket No. 08-cr-242, ECF No. 1350. A five-year term of supervised release calculated using a December 10, 2010 release date, he argues, would have ended on December 9, 2015.

**DISCUSSION**

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Espinal challenges his sentence pursuant to § 2255 on the grounds that (1) he received ineffective assistance of counsel, and (2) I lacked jurisdiction to revoke his term of supervised release and impose the twenty-four-month sentence for its violation. The government responds that Espinal's petition is untimely and that his claims fail on the merits. Because I find that Espinal's petition is untimely, I do not decide the merits of his claims.

Section 2255(f) sets a one-year limitation period for § 2255 motions. *See* 28 U.S.C. § 2255(f). The one-year period runs from the latest of several dates, including "the date on which the judgment of conviction becomes final," § 2255(f)(1), "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[,]" § 2255(f)(3), and "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," § 2255(f)(4). A district court may extend the one-year limitation period "only if . . . 'rare and exceptional' circumstances warrant equitably tolling the limitations period." *Green v. United States*, 260 F.3d 78, 82–83 (2d Cir. 2001).

**I.     Espinal's petition is not timely under § 2255(f)(1) because he filed it more than one year after the date on which his conviction became final.**

"[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final

when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam). The time to file a direct appeal in a criminal case expires after fourteen days from the entry of the judgment that defendant would be appealing. *See* Fed. R. App. P. 4(b)(1)(A)(i). Judgment entered in Espinal's most recent criminal sentencing, as well as in his sentencing for his violation of supervised release, on August 18, 2017. The last day on which he could have filed a direct appeal was fourteen days later, or September 1, 2017. *See* Fed. R. App. P. 26(a)(1) (explaining how to compute time periods). Thus, the one-year limitation period under § 2255(f)(1) expired on September 1, 2018. Petitioner filed his § 2255 motion on November 15, 2019—more than one year too late. The petition is untimely under § 2255(f)(1).

## II. Espinal's petition is untimely under § 2255(f)(3) because he is not asserting a newly recognized right that has been made retroactive.

Under § 2255(f)(3), the one-year limitation period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" 28 U.S.C. § 2255(f)(3). A rule applies retroactively to cases on collateral review only if it is a "[n]ew *substantive* rule[]" or a "new 'watershed rule[] of criminal procedure[.]'" *See, e.g.*, *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (first quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); then quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)) (applying framework announced in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), to determine whether new rule applies to cases on collateral review). In either category, the rule must be "new" in order to apply retroactively—that is, it must be "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301.

Espinal does not assert a newly recognized, retroactive right. Espinal argues that he is asserting a right that the Supreme Court first explicitly recognized after the entry of judgment in

his case. *See* Pet'r's Br. 2; Pet'r's Reply 1. Namely, in *Garza v. Idaho*—decided in February 2019—the Court held that "regardless of whether a defendant has signed an appeal waiver[,]" if the defendant's "attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" *Garza v. Idaho*, 139 S. Ct. 738, 749–50 (2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)). However, the Supreme Court has not held *Garza* retroactive. Nor can I hold that the *Garza* rule applies retroactively, as *Garza* did not announce a new rule. The *Garza* Court explained that its ruling "follow[ed] squarely" from its earlier decision in *Flores-Ortega*, 528 U.S. 470, and its holding applied the presumption of prejudice that *Flores-Ortega* had previously recognized to a set of facts wherein the defendant had signed an appeal waiver, *Garza*, 139 S. Ct. at 749–50. Thus, precedent dictated the *Garza* rule. *See In re Sanchez*, No. 19-11288-B, 2019 U.S. App. LEXIS 13242, at *4 (11th Cir. May 1, 2019) ("[*Garza*] did not announce a new rule of constitutional law, as it simply extended *Flores-Ortega*'s holding to cases in which the defendant has executed an appeal waiver."); *United States v. McGee*, No. 5: 16-095-DCR, 2019 WL 4248887, at *2 (E.D. Ky. Sept. 6, 2019) (citing *Sanchez*, 2019 U.S. App. LEXIS 13242, at *4–5) ("*Garza* did not announce a new rule of constitutional law[.]").[2]

In addition, the supposed "right" that Espinal is asserting is not the one that the Court recognized in *Garza*. 28 U.S.C. § 2255(f)(3). *Garza* recognized that a presumption of prejudice

---

[2] Even assuming that the *Garza* rule is new, I cannot conclude that it is either a substantive rule or a watershed rule of criminal procedure. *See Welch*, 136 S. Ct. at 1264–65 (quoting *Summerlin*, 542 U.S. at 353) ("A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes."); *Whorton v. Bockting*, 549 U.S. 406, 417–18 (2007) (first quoting *Summerlin*, 542 U.S. at 352, 356; then quoting *Tyler v. Cain*, 533 U.S. 656, 665 (2001)) (calling watershed procedural rule exception "extremely narrow" and explaining that to qualify as watershed, new rule must "be necessary to prevent 'an impermissibly large risk' of an inaccurate conviction" and "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.").

applies when an attorney "fail[s] to file a notice of appeal *despite the defendant's express instructions*[.]" 139 S. Ct. at 750 (emphasis added). Espinal has not claimed that he ever expressly instructed his attorney to file a notice of appeal, and Espinal's plea and sentencing attorney asserts that Espinal never asked him to do so. *See* Att'y Decl. Gov't Ex. C at ¶ 7. Moreover, Espinal could have brought an ineffective assistance of counsel claim before the Supreme Court decided *Garza*: prior to *Garza*, the Court had long recognized that an attorney's failure to file a notice of appeal after a client clearly requested one was deficient performance. *See* 139 S. Ct. at 746 (quoting *Flores-Ortega*, 528 U.S. at 477) (stating rule that attorney performs deficiently by failing to file clearly requested notice of appeal and calling that rule "long held"). *Garza* decided only whether a presumption of prejudice would apply when the client had waived the right to appeal. *See id.* at 746–47 ("We now address the crux of this case: whether *Flores-Ortega*'s presumption of prejudice applies despite an appeal waiver."). Thus, Espinal's petition is not timely pursuant to § 2255(f)(3).

### III. Espinal's petition is untimely under § 2255(f)(4) because he does not assert that any recently discovered facts support his claim.

Under § 2255(f)(4), the one-year limitation period runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). This subsection

> is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final to the later date on which the particular claim accrued.

*Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000) (internal citation omitted). Accordingly, when a petitioner claims ineffective assistance of counsel based on an attorney's failure to file an appeal, the court must "determine when a duly diligent person in petitioner's circumstances would

8

have discovered that no appeal had been filed. After that date, petitioner was entitled to further delay . . . so long as he filed his petition within one year of the date [o]n which the discovery would have been made in the exercise of due diligence." *Id.* at 188, 190. "[D]ue" diligence means "reasonable[] diligence" and not "maximum feasible diligence." *Id.* at 190 n.4.

Here, Espinal claims to have only learned about "the errors in the judgment and counsel's ineffectiveness" in September 2019, when, after diligently seeking legal advice from his fellow prisoners, he finally encountered a "jailhouse lawyer[]" who advised him that he had a claim. Pet'r's Reply 1. He does not claim to have only recently discovered that his attorney never filed an appeal. *Cf. Wims*, 225 F.3d at 190 (asking when, with due diligence, petitioner could have discovered that counsel had not, in fact, filed appeal). In fact, he does not claim to have only recently discovered any new "facts," § 2255(f)(4), but rather to have only recently discovered the law, *see United States v. Pearson*, No. 1:04-CR-340, 2014 WL 12845369, at *3 (N.D.N.Y. June 12, 2014) ("[H]oldings of . . . case[s] do not amount to 'new facts' under § 2255(f)(4)."). That the petitioner is *pro se* and was unable to earlier identify his claims for relief does not render his petition timely. *See Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness[.]").

Further, at Espinal's sentencing proceeding in August 2017, I informed Espinal that he "may be entitled to appeal at least aspects of [his] sentencing" and that he would have to do so within fourteen days. Sentencing Tr. Gov't Ex. B at 15:4–7, Docket No. 08-cr-242, ECF No. 1347-2. Immediately before informing Espinal of that right, I acknowledged that a plea agreement was in effect. *See id.* at 14:24–15:3. Thus, I made clear that despite the plea agreement, Espinal may have retained the right to appeal certain aspects of his sentencing. I therefore cannot credit his

9

claim that he only learned in September 2019 that he had a right to file a notice of appeal despite his appeal waiver, and that accordingly, his counsel provided deficient advice.

Espinal's claim regarding my revocation of his term of supervised release is also untimely under § 2255(f)(4). Espinal rests this claim on two purported facts: first, that no summons issued at all prior to my revocation of his supervised release, *see* Pet'r's Br. 3, and second, that even if a summons did issue, it issued too late to confer jurisdiction on the court to revoke his supervised release, *see* Pet'r's Reply 1. Espinal's first proffered fact is not true, as a summons issued on December 16, 2015. *See* Summons Gov't Ex. A at 3. Nor does it bear on the timeliness of Espinal's petition, as Espinal's initial appearance for his violation of supervised release occurred in December 2016, at which point anyone using due diligence would have discovered that no summons had issued.

Espinal claims to have only learned the second fact—that if a summons did issue, it issued too late—between submitting his § 2255 motion in November 2019 and submitting his reply brief in December 2019. *See* Pet'r's Reply 1. He argues that his term of supervised release expired on December 9, 2015 and not on December 22. *Id.* Thus, because his term of supervised release expired on December 9 and the summons for his violation issued after that date—on December 16— I revoked his term of supervised release without jurisdiction. *See* 18 U.S.C. § 3583(i) (stating that court's power to revoke supervised release extends beyond expiration of supervised release term for "reasonably necessary" period, as long as summons issues before expiration of term). As evidence that his term of supervised release ended on December 9, 2015, Espinal cites a Bureau of Prisons "Sentence Monitoring Computation Data" document. This document shows that Espinal had a "statutory release date projected" of December 10, 2010, that his "actual satisfaction date" was December 23, 2010, and that he over-served his prison time by thirteen days. Sentence

Monitoring Computation Data 3. Espinal interprets this information to mean that he should have been released from prison on December 10, 2010 instead of on December 23, and that, accordingly, his five-year term of supervised release ended on December 9, 2015 instead of on December 22.

Even assuming that Espinal's logic is correct, his claim is not timely under § 2255(f)(4).[3] A prisoner's projected release date is just that—a projection, necessarily generated in advance of that prisoner's actual release. In this case, Espinal was imprisoned and released in December 2010; the Bureau of Prisons would have generated his projected release date before his release on December 23, 2010—about nine years ago. It is not difficult to obtain a prisoner's projected release date; today, at least, members of the public may call the Bureau of Prisons and obtain a prisoner's projected release date over the telephone. *See Sentence Computations*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmates/custody_and_care/sentence_computations.jsp (last visited Jan. 16, 2020). Espinal first raised the instant argument in his reply brief filed in December 2019 and has proffered no reason why a person using due diligence would need nine years after his release to discover his projected release date and compute the end date of his term of supervised release. Further, to the extent that Espinal claims ineffective assistance of counsel based on his attorney's failure to object to or appeal from my alleged revocation of supervised release without jurisdiction, *see* Pet'r's Br. 3, that claim would depend on Espinal's discovery of the same facts—that is, his projected release date and the purported non-issuance or late issuance of the summons. Thus, Espinal's claim regarding my revocation of his supervised release is untimely under § 2255(f)(4).

---

[3] Espinal's logic is incorrect. Terms of supervised release begin on the day of the prisoner's release from prison, and not on the day on which the prisoner should have been released. *See* 18 U.S.C. § 3624(e); *United States v. Johnson*, 529 U.S. 53, 60 (2000) ("The statute, by its own necessary operation, does not reduce the length of a supervised release term by reason of excess time served in prison."). Further, without knowing more about the Bureau of Prisons sentence computation document, I cannot know whether Espinal should, in fact, have been released on December 10 rather than on December 23.

11

I acknowledge that, at least according to Espinal's "Sentence Monitoring Computation Data" document, he overserved his 2010 prison term by thirteen days. Sentence Monitoring Computation Data 3. Espinal may be eligible for a thirteen-day credit to the prison sentence that he is currently serving, and I encourage him to pursue that matter with the Bureau of Prisons.

## IV.   Equitable tolling of the statute of limitations is not warranted.

A district court may extend the § 2255 one-year limitation period "only if . . . 'rare and exceptional' circumstances warrant equitably tolling the limitations period." *Green*, 260 F.3d at 82–83. "To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003) (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)). To make this showing, a "petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* (quoting *Hizbullahankhamon*, 255 F.3d at 75). "[T]he usual problems inherent in being incarcerated do not justify equitable tolling." *Id.* at 152. Further, "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," but in some cases "an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Id.* The Second Circuit has found an attorney's conduct extraordinary when the attorney failed to file a § 2255 petition after his client specifically directed him to do so, did no legal research on his client's case, gave his client incorrect advice about the law, failed to inform his client about the status of his case, and failed to adequately explain the case to his client. *See id.*

I do not find any rare and exceptional circumstances here that would warrant equitable tolling. Rather, Espinal attributes his delay to the fact that he is *pro se* and relying on the advice of "jailhouse lawyers." Pet'r's Reply 1. Espinal's circumstances reflect "the usual problems inherent in being incarcerated" and, as such, "do not justify equitable tolling." *Baldayaque*, 338 F.3d at 152. Thus, I decline to equitably toll the statute of limitations.

## V.     I decline to appoint counsel or hold a hearing.

Under 18 U.S.C. § 3006A(a)(2)(B), I may appoint counsel for a § 2255 petitioner if I "determine[] that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). I cannot make such a determination here, as it is clear that Espinal's petition is untimely and therefore barred.

Further, when resolving a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255(b). To decide whether a hearing is necessary, I must review the petitioner's motion and exhibits, along with "relevant portions of the record in the underlying criminal proceeding." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). I must then determine "whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief." *Id.* I should hold a hearing "[i]f material facts are in dispute[.]" *Id.* However, "[t]o warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987) (citing *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962)). "Airy generalities" and "conclusory assertions . . . will not suffice because none of these would be admissible evidence at a hearing." *Id.* at 113–14 (citing *United States v. Franzese*, 525 F.2d 27, 31 (2d Cir. 1975)).

Here, a hearing is not necessary because it is clear from Espinal's motions and the submitted evidence that his petition is untimely. No material facts regarding the timeliness of his motion are in dispute. Thus, I decline to hold a hearing.

**CONCLUSION**

For the foregoing reasons, Espinal's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied. Furthermore, because Espinal has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), I decline to issue a Certificate of Appealability. Espinal may seek such a certificate from the Second Circuit Court of Appeals.

SO ORDERED.

Dated: January 17, 2020 _____/s/_____
       Brooklyn, NY        Allyne R. Ross
                                              United States District Judge